Thank you, Jim. May it please the Court, Christopher Young was sentenced to death following a jury First, in violation of Batson v. Kentucky, prosecutors improperly removed at least one potential juror from the veneer, despite the fact that she was qualified to serve as a juror in this case. Second, in violation of Simmons v. South Carolina, the trial court instructed the jurors that they lacked the authority to sentence Mr. Young to life unless ten of them agreed to do so, when in fact the decision of a single juror to sentence Mr. Young to life would have been sufficient to accomplish that purpose. And third, in violation of Mills v. Maryland, the trial court instructed the jury in a manner that created a reasonable likelihood that one or more jurors would misunderstand that they need not agree among themselves as to which particular evidence was mitigating in order to return an answer to the mitigation question that would have resulted in the imposition of a life sentence. The risk of confusion arose because the trial court neglected to give a statutory instruction that would have ensured that there was no confusion. The Texas statute requires the trial court to charge the jury that in answering the mitigation question, the jury need not agree on which particular evidence can support an answer to the mitigation question that results in the imposition of a life sentence. Is no requirement constitutionally required? Judge Higginbotham, if the statute did not include the language, it would in fact be constitutionally deficient because as Mills v. Maryland makes clear, it is the Constitution that requires this result. That's really the point of my question, I suppose, but if you look at Justice Breyer's opinion, and he juxtaposes the charges given in Mills and the charges given there, there is a conspicuous difference. In Mills, you've got a list of the verdict form, 10 aggravating factors, and then eight mitigating factors, and two different pages, and at the top it said, we, the jury, unanimously fine. So that was about as clear a statement of breach of the fundamental principle that the jury is entitled to consider any mitigating factor. So by that metric, if you look at a requirement that doesn't contain that language, but simply doesn't require the affirmative, does not always face to be constitutionally required. I don't know if I'm clear about it. I think I understand your question, Judge Higginbotham. Mills itself, of course, rests squarely on locket and eddings, the idea that the jury must be permitted to give effect to any mitigating evidence that the defense places before them. The defect in Mills was that the statute enumerated both aggravating and mitigating factors, and the jury instruction created a likelihood that the jury would be confused when deciding whether a mitigating circumstance had been proved, that they had to agree unanimously. Well, it wasn't a likelihood. It was very clearly stated that we fine each of, we fine unanimously, and it was one, two, three, four, five, and then you check off those. So it was quite clear that the jury was told that they had to fine unanimously as to any one particular. And Justice Breyer points out in Spisak that lays the rest, that you have three, one juror thinks the mitigating factor one is good, one thinks mitigating factor two is good, and the other thinks three. And the result would be you would violate the fundamental principle that any one of them, in the mind of a juror, should be sufficient. I think I understand your suggestion, Judge Higginbotham. In Spisak, the jury was told that each juror could take account of any piece of mitigating evidence in answering the question. And had the instruction that is provided for by the Texas statute been given in this case, then the jury in this case would have been instructed exactly as was the jury in Spisak. The result of not giving that instruction was that the jury instruction more resembled the instruction from Mills than the instruction in Spisak. Now, the difference, of course, is that Mills required unanimity, whereas the instruction in this case required ten. But it nevertheless suggested to the jurors that in deciding whether there were ten votes in favor of a finding of sufficient mitigation to result in the imposition of a life sentence, that they had to agree on what that mitigating evidence was. And the very purpose of the instruction that wasn't given in this case was to make sure that didn't happen. And, in fact, there are two decisions from the Court of Criminal Appeals that are not cited in our letter brief, but that I call to the attention of this court. One is a case called Russo v. State, 855, SW 2nd, 866. It's from the Court of Criminal Appeals in 2005. The other is Segundo v. State, 270 SW 3rd, page 79, from the Court of Criminal Appeals in 2008. And in both of those cases, in Segundo especially, the Court of Criminal Appeals emphasizes that the question under Mills is whether a juror could have reasonably believed that that juror could not answer the mitigation question in a particular way. And what Judge Cochran's opinion in Segundo emphasizes is that the reason that there isn't Mills' error in Texas is precisely because of the jury instruction that the Texas legislature added to 37071 following the Supreme Court's decision in the first Penry case. At least one justice of the Texas Court of Criminal Appeals would connect the two. Segundo is a unanimous opinion. Segundo is a unanimous opinion written by Judge Cochran. That's right. Because of the – We have authority from this court that even suggests, though, that Mills doesn't even apply in Texas, and Mills, as you know, was a weighing jurisdiction. The authority, Judge Smith, as I read the cases from this circuit that hold that Mills doesn't apply is that Mills does not apply to the 10-2 rule. Not that it does not apply to the proposition that in arriving at a verdict, the jurors must be able to take into account different categories of mitigating questions or mitigating evidence in answering the mitigation question. It's absolutely true that this circuit has held that Mills does not create any difficulty with the Texas 10-2 instruction. And our argument with respect to the 10-2 instruction is a Simmons claim, not a Mills claim. But I don't think that there are cases from this court that hold that Mills is simply inapplicable in Texas. Now, there are cases that suggest that the Fifth Circuit does not understand Spisak to answer the Mills question in Texas. The Spisak decision has been cited a number of times by this circuit, and never for the proposition that Mills doesn't apply. And as I was suggesting in my answer to Judge Higginbotham, of the five cases where this court has cited Spisak, one of them is a federal death penalty case, so obviously doesn't raise the same issues as Mr. Young's case. Three of them don't involve Mills' claims at all, and only one case called Allen, 805F3rd, I just have the jump site, it's at page 632. I don't know what page that case begins on. 617. 617. Thank you, Judge Higginbotham. In Allen, the petitioner received the required instruction that is required by Texas law. So the fact that Spisak, in combination with instructing the jury in the statutorily and constitutionally required manner, eliminates any Mills claim is inapplicable in this case. I'd like to spend a few minutes, if I might, saying a bit more about the questions relating to Almanza that this court requested additional briefing with respect to. As the court is aware, the Almanza decision is a state court decision that creates two different harm standards depending on whether an error or an objection is preserved at trial. And so if an error or objection is preserved, there's a lower harm standard, and if it isn't preserved, then the Court of Criminal Appeals will still address the merits of the issue, but it imposes a higher harm standard. And this court asked a series of questions having to do with the invocation by the Court of Criminal Appeals of Almanza constitutes an independent and adequate state ground that would bar a federal court from granting relief. And, of course, if the answer to that is yes, then it would, I think, follow a fortiori that it was appropriate for the court below to deny a certificate of appealability with respect to that issue. In addition to the arguments that we made in the letter briefing that we provided to this court, I'd like to mention a couple of additional facts. One is that this issue, the issue of the conjunction of Almanza and Mills, rarely arises in Texas. In fact, by my research, the only case where it's ever arisen is Mr. Young's case, and the reason for that, as Judge Cochran for the unanimous court stressed in Segundo, is that when the instruction provided in 370712F3 is given, there isn't a Mills violation. Here, obviously, it wasn't given. There have been 22 cases in the Court of Criminal Appeals that cite Mills against Maryland, and of those 22, there is not a single one that deals with the issue presented in this case. Of those cases in the Court of Criminal Appeals, of the 22 cases that cite Mills, there are another five that cite Almanza, and of the five cases that cite both Mills and Almanza, there is not a single case where the Court of Criminal Appeals uses the two-track harm standard that it identifies in Almanza in order to address a Mills violation. So I think what the constellation of these cases reveals is that even if Almanza were an independent state law ground, it's certainly not adequate because the Court of Criminal Appeals is not regularly applying the Almanza standard to address Mills violations. What I'd say further is that Almanza cannot even represent an independent state law basis because Almanza is about harm and Mills doesn't require a showing of harm. Mills' error is identified by looking at the jury instruction and asking whether there's a reasonable likelihood that the juror or jury would be confused by that instruction, and if the answer to that is yes, that's the end of the matter. I think that there might be a very narrow universe of cases where harm analysis would be appropriate in the context of Mills' error, and that narrow universe of cases would be where there's no mitigating evidence at all. The threshold jurisdictional question before this court with respect to the Mills' error is the COA standard, which is repeatedly misstated in the court below, and that question is simply whether jurists of reason could debate the answer to this question. Jurists of reason can debate the answer to this question, and not only can jurists of reason debate the answer to this question, but the question that the court below got is wrong. The omission of the Texas instruction performed exactly the injury that the Court of Criminal Appeals recognized in Segundo and Russo. It was designed to prevent, and that Mills' error requires that Mr. Young receive a new punishment trial. I'd like to turn now, if the court doesn't have more questions about Mills for me, at least at the moment, to the Batson claim that we've raised. There were 60 potential jurors on the jury veneer in this case. Six of them were black. One was disqualified. One was removed for cause. That left four. One served on the jury, and three were struck. The defense raised Batson challenges with respect to each of these three. The Batson claim before this court involves one juror in particular whose name was Myrtleene Williams. In offering an ostensibly race-neutral explanation for its decision to remove Ms. Williams from the veneer, the government insisted that the reason that she was being removed was because of her religious affiliation. The reason wasn't that she had particular beliefs. The reason wasn't that she could never agree to sentence a defendant to death. In fact, the reason wasn't even that she participated in a ministry at her church that ministered to prisoners. The reason was that she was a member of a church that had a ministry at that church that ministered to prisoners. The relevant portion of the dialogue between the defense lawyer who raised the Batson claim at trial and the prosecutor is actually contained in the Court of Criminal Appeals opinion, and the relevant section is cited in the government's brief in this case at pages 21 to 23. And it's clear that after the defense lawyer objects to the removal of Ms. Williams on the basis of race, the prosecutor says, I'm not getting rid of her because she's black, I'm getting rid of her because of her membership in a church. The defense lawyer says at that point, you haven't said anything about whether she is able to follow her oath and follow the court's instructions, and the prosecutor says that's right, it's because I'm getting rid of her for her membership in church. So what we have on this record is an acknowledged example of removing a particular juror from the veneer for reasons having nothing to do with anything other than that juror's membership in a particular religious institution. That's a Batson violation, and we believe that the Batson violation is established in two ways or demonstrated in two ways. Has the Fifth Circuit squarely held that? No, the Fifth Circuit has not squarely held that, Judge. We addressed it in the Greer case, didn't we, but didn't get there? And so if the court wants to use this case as the opportunity to make clear what other courts that have conducted this same exercise have concluded, namely that as Justice Breyer's opinion in Miller-El, as Justice Kennedy's opinion in JEB against Alabama, as Justice Thomas' dissent in Davis against Minnesota, all demonstrate the logic of Batson and JEB against Alabama extends to strikes on the basis of religion. You read my dissent in Greer, I'm sure. Read your dissent in Greer, Judge Smith, and the one thing that you didn't talk about in your dissent in Greer that I would like to at least suggest is relevant is that in the Witherspoon line of cases, the Supreme Court suggests, and for that matter in this court's understanding of the Witherspoon line of cases, the Supreme Court suggests that membership in a particular religious institution is irrelevant for the purposes of government action. And another way to think about that is that an equal protection violation arises when people are targeted on the basis of their membership in a particular religious institution for the same reason that it arises when people are targeted on the basis of race or gender, because that characteristic that individuals have is irrelevant to any legitimate interest that the government may pursue. I'd like to spend, finally, before my time expires, a few minutes on the Simmons claim in this case, which is different from the form that this claim has taken in other cases. The challenge in this case is not to the permissibility of the 10-2 instruction or the 10-2 rule. The Simmons challenge in this case is that each individual juror is affirmatively misled by the trial court as to that individual juror's power and authority to return a sentence of life rather than death. The trial judge tells the jury that they cannot answer the special issues in a way that is favorable to the state unless all 12 agree, and that is true. And then the trial court tells the jury that they cannot answer the questions in a way that is favorable to the defendant and that would result in a life sentence unless 10 of them agree, and that is false. Because the way Texas law actually operates, as the statute itself makes clear, but the jurors are just not told this, is that if even a single one believes that the answer to the mitigation question is affirmative, the result is a life sentence. Now, it is true, as the government argues, that the precise way in which the jury was misled in Simmons against South Carolina and Schaefer against South Carolina, and there's a third South Carolina case that I've forgotten the name of, the precise way in which the jurors were misled in that case is that they were misled with respect to parole ineligibility. But the key fact is that they were misled in an area that bore on whether they were going to sentence the defendant to life or death. The reason it mattered that they were misled with respect to parole ineligibility is because by misleading them on that dimension, there was an increased likelihood that they would sentence a defendant to death whom they would otherwise sentence to life. The Court of Criminal Appeals held this argument was procedurally defaulted, correct? Yes, the Court of Criminal Appeals held this argument was procedurally defaulted. Why isn't that an independent ground for denying relief? Because there's not any opportunity other than appeal to complain about the Texas statute. I mean the first opportunity to complain about the fact that the Texas statute represents a Simmons error is in collateral proceedings. So I think that the fact that the Court of Criminal Appeals held that it was procedurally defaulted doesn't recognize the first forum in which it can be raised. To the extent, Judge Owen, that you're not persuaded by that argument, then we have also made both the Simmons argument and for that matter the Mills argument as part of our ineffective assistance of counsel claims. So the last question that the Court asked in its request for additional briefing is whether it's possible to address the merits of the Mills issue even if Almanza is an independent and adequate state law basis for decision. And our answer to that question with respect to Mills would be equally applicable with respect to Simmons, which is that if an objection was required, then there's not cause for not having made it and there's certainly prejudice. I'll reserve the remainder of my time for rebuttal. Thank you. Yes, you've saved time for rebuttal. Thank you, Mr. Dow. Ms. Stewart-Klein? May it please the Court? Today's case presents several interesting, although ultimately meritless, claims of error. In short, the director wins on Young's Batson claim because this court is not free to create a new rule of constitutional law. And the director wins on Young's remaining claims because he cannot show harm. In his first claim before this court, Young argues that Vernier person Myrtleen Williams was struck by the prosecution for being a member of the Calvary Baptist Church. He further contends that this religious-based strike is a violation of his constitutional rights under Batson. And he attempts to sidestep his default of this issue by arguing that because the CCA cited Ciceras in denying his race-based Batson claim, he's entitled to argue that the holding is an unreasonable interpretation of clearly established federal law. But Young is wrong. There is no clearly established federal law on this point, and his claim is both unexhausted and procedurally defaulted. He did not make a religious-based Batson-type objection at trial. He did not raise this claim on direct appeal, and he did not raise this claim on state habeas. Young cannot use the state court's ruling to exhaust a claim that he never made. Young's utter failure to preserve and exhaust his claim bars him from any relief. But regardless of the default, he still loses. Federal habeas relief is only available for clearly established constitutional rights. To date, the Supreme Court has never held that Batson extends to religious affiliation. And this court is bound by its prior decision in Fisher that holds that religious-based Batson-type claims are barred by Teague because they require a new rule of constitutional law. Young's claim is both clearly defaulted and Teague-barred, and is simply not debatable. Thus, the COA should be denied. If the court has no further questions on that, I'll move on to his remaining claims. Young's remaining claims are loosely connected. He attempts to use juror affidavits, which are clearly foreclosed by both pinholster and federal law, to support each of these claims. He claims that he deserves relief under Simmons v. South Carolina, Mills v. Maryland, and because he received ineffective assistance of trial counsel when counsel failed to object to a missing jury charge that was required by state statute. But his claims all fail. The lower court reviewed the Simmons claim de novo and still denied relief. The CCA and the lower court both reviewed the jury charge error and concluded that he could not show harm under various standards. This same determination also dooms his claim of ineffective assistance of counsel because he cannot demonstrate prejudice. In a substantially similar case, the Supreme Court has held that there is no Mills violation. And this court has held that Mills does not generally apply to Texas. This court should not overlook Young's defaults, and it should not accept his invitation to ignore circuit precedent, much less to create a new rule of constitutional law. Nor should this court believe in his unproven claims of harm. In short, this court should not grant a certificate of appealability. If this court has no further questions, I'm happy to return the remainder of my time. All right. Thank you, Mr. Klein. Thank you, Judge Smith. I'll be brief. The question with respect to whether the Batson claim is TIGBARD is a question of what was dictated at the time of Mr. Young's trial. At the time of Mr. Young's trial, it was clear that targeting individual members of a jury on the basis of their religious affiliation is constitutionally forbidden. The attorney general itself has acknowledged in its brief that the question for this court is whether the Court of Criminal Appeals identified a permissible reason for striking Ms. Williams. Her religious affiliation is not a permissible reason. What about the argument that this case is unexhausted? I mean this issue is unexhausted and procedurally defaulted because it was not raised in your state habeas petition, or Mr. Young didn't raise it in his state habeas petition. Judge Owen, the issue that is raised and exhausted is that Ms. Williams was removed because she's black. That's not in your petition in front of us, though. It is in our petition in front of you. Our briefing in front of you stresses that the Batson claim that was raised at trial, the Batson claim that was pressed in the state court, and the Batson claim that was pressed in federal court is a Batson claim based on the fact that Ms. Williams is black. The government then says, no, no, no, the reason we got rid of her is not because she's black. The reason we got rid of her is because of her religious affiliation. But there was no objection in the trial court at the time that that's an improper basis. There was no—you didn't raise it in the direct appeal. The court of criminal appeals talked about it. Then in state habeas, you didn't say, well, that's an impermissible basis for—it's a pretext for race and it's an impermissible basis. So it has to be a pretext because it's constitutionally infirm. I don't see that it's been preserved all the way up. I think, Judge Owen, that the question is whether when the government says, no, we're not getting rid of her because she's black. We're getting rid of her because of her membership in church. And then you have to say, well, that's a constitutionally infirm reason in any event. You can't rely on that. I don't know why that would be the case. I think that the question is whether at the stage that the prosecution is responding to the Batson objection, it has offered a not only race-neutral explanation but a permissible explanation. It can't just be race-neutral. It also has to be permissible. You're saying it's an impermissible reason. And you didn't—no one objected in the trial court that it was an impermissible reason. Nobody said in the court of criminal appeals, on direct appeal, that it was an impermissible reason because religion. The court of appeals said, well, it talked about being okay. Then in state habeas, you didn't say the court of criminal appeals erred because as a constitutional matter, it's an impermissible basis on the religion piece. That was not preserved in your state habeas petition. Or was it? Young's habeas. I didn't actually write the state habeas petition. Mr. Young's petition. But the argument in the state habeas petition was that the Batson claim was a race-based claim and that it was not permissible for the prosecutor to respond, that the reason that she was being removed was because of her religious identification. And that is the reason that when the court of criminal appeals ruled on appeal that the Batson claim was going to be rejected, that it cited its own opinion in Caceres that says, no, no, no, it's perfectly okay for the prosecutor to get rid of somebody on the basis of her religious membership. So what the court of criminal appeals understood was that the Batson claim was a race-based claim. What about that was direct appeal? Yes. What about state habeas? What was raised in state habeas? The argument was exhausted on direct appeal. For purposes of federal habeas, it only has to be raised one place or the other. No one said, Young never said on his direct appeal that the reason the state gave the religious grounds was impermissible in and of itself. I don't know whether that's true. I don't know what Young's lawyer at the time said. We can look at the papers and see. We can look at the papers. I don't know if there was oral argument in this case. It's not in the moving papers. Correct. But what we know is that the issue was before the court of criminal appeals because otherwise the court of criminal appeals citation to Caceres would make no sense. The court of criminal appeals says that the race-neutral explanation here is religious membership, and that's okay. Religious membership is okay citing its own opinion in Caceres. So at that point, it is true that Young's lawyers didn't file a motion for rehearing and say, whoa, whoa, whoa, that's not a permissible reason either because of all of these other cases. But I don't think that they were obligated to do that in order for the issue to be properly before this court. Mr. Dow, you didn't use all your opening time. You used almost all of it. But if you would like to take a minute to summarize or quickly cover something else, you may, but only a minute. All right. I'd like to just say a quick word about the juror affidavits and the question of Mill's harm one more time. I fear that I didn't adequately emphasize that Mill's error requires no harm, and I didn't say a word about the juror affidavits simply because I was running out of time. But I will say just two sentences now. And those two sentences are that what the juror affidavits reflect is that the Simmons error and the Mills error in this case were actually impactful. They are clearly not barred by Rule 606 because Rule 606 deals only with inquiries into the validity of a verdict, and that's not what this case is about. This case has no inquiry into the validity of the verdict. It has to do with whether Mr. Young's constitutional rights were violated at trial. So in our view, Rule 606 is inapplicable, which leaves the government's argument that the affidavits are barred by Cullen against Penholster. And what I'd say about Penholster is that it is true that for purposes of deciding the 2254D1 question, namely whether the state court decision is objectively unreasonable, all that this court can look at is the evidence that was before the state court at the time that the state court issued its opinion. But if, after doing that, the court concludes that the state court judgment is objectively unreasonable, then Cullen v. Penholster doesn't apply anymore. What's your best case for that statement? I think the language of Cullen v. Penholster itself, which says that what Cullen v. Penholster does is preclude the federal court from looking at any additional evidence when deciding whether the petitioner has met its burden under 2254D1, and that question is whether the state court determination is objectively unreasonable. All right. Thank you, Mr. Dow. Your case is under submission and court is in recess.